# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2289-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

I.B.,[1]

    Defendant-Appellant,

and

THE BIOLOGICAL FATHER
WHOMSOEVER HE MAY BE,

    Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF Z.A.I.B.B.,
and Z.P.L.B., minors.

_____

       Submitted November 6, 2025 – Decided December 19, 2025

---

[1] We use initials and pseudonyms to protect the privacy of individuals and the records of this proceeding. R. 1:38-3(d)(12).

Before Judges Currier, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0033-20.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Christine Olexa Saginor, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Jessica A. Prentice, Deputy Attorney General, on the brief).

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minors Z.A.I.B.B. and Z.P.L.B. (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant I.B., "Ingrid," appeals from an order terminating her parental rights (TPR) to two children, returning to this court for the second time following a retrial. Ingrid's first child, Z.A.I.B.B. "Zack," was born in February 2018, shortly after Ingrid turned eighteen. Zack is medically fragile and spent the first several years of his life in hospitals and nursing homes. The Division of Child Protection and Permanency (Division or DCPP) eventually assumed custody of Zack on January 18, 2019, after Ingrid refused to consent to a critical surgery he needed. Ingrid's second child, Z.P.L.B., "Zoe," was born April 2019.

Both mother and daughter tested positive for cocaine at birth. As a result, Zoe was placed with a resource parent upon discharge from the hospital and the Division was awarded custody of her.

On September 20, 2021, Ingrid's parental rights were terminated. We reversed that decision because Ingrid had been inadequately represented at trial. Shortly before retrial was scheduled to begin, Ingrid was evaluated by an expert who identified certain neuropsychological issues and stated she may be on the autism spectrum. Around the same time, her assigned counsel was substituted. After a short continuance, retrial commenced on November 1, 2023, before a different judge. On February 20, 2024, the court again found the Division had proven Ingrid's parental rights should be terminated by clear and convincing evidence.

On appeal, Ingrid advances several arguments. She challenges the reliability of the Division's expert witness, Dr. Frank Dyer, Ph.D. contends that the court and the Division should each have better understood and accommodated her neuropsychological issues, and asserts the court and the Division improperly discounted her father, L.B. (Lee), as a placement option or supportive resource.

3

Based upon our review of the record and applicable law, we are satisfied the evidence supports the decision to terminate Ingrid's parental rights by clear and convincing evidence. Accordingly, we affirm substantially for the reasons set forth by Judge Paul Nieves in his thorough and well-reasoned ninety-six-page written opinion rendered on February 20, 2024.

The trial court's extensive opinion thoroughly addressed all four statutory factors for termination and need not be repeated in detail here. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Nieves's decision. We add the following comments.

We give substantial deference to the trial court's opportunity to have observed the witnesses first-hand and to evaluate their credibility. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). A trial court's decision should be reversed on appeal only if its findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Child Prot. & Permanency v. D.A., 477 N.J. Super. 63, 80 (App. Div. 2023) (quoting N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 511 (2004)) (internal quotation marks omitted). However, we acknowledge our review of the trial court's legal interpretations is de novo. R.G., 217 N.J. at 552-53; D.A., 477 N.J. Super. at 80-81.

Ingrid argues a recent suggestion that she may be on the autism spectrum impacts Dr. Dyer's testimony. However, Ingrid's actual diagnosis is not the relevant inquiry under prongs one or two. The trial court is charged with determining whether Ingrid can minimally parent her children without exposing them to future risk of harm, regardless of the issues or diagnoses that compelled removal or prevent reunification. N.J.S.A. 30:4C-15.1(a)(1) to (2); see also N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div. 2001). It is of little moment whether Ingrid is unable to parent her children because of a mental illness or a neurological disorder. Although we agree mental illness alone cannot disqualify a parent from raising her children, situations where such illness or neurological condition prevent her from doing so without exposing the children to future risk of harm are sufficient to satisfy both prongs one and two. A.G., 344 N.J. Super. at 438 ("That the parents may be morally blameless is not sufficient to tip the scales in their favor."); see also N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 450-51 (2012) (affirming termination of mother's parental rights for failing to protect her children from their father who had an untreated mental illness that posed a risk of danger).

Defendant first argues her parental rights cannot be terminated because, pursuant to prong one, she has never been found to have abused or neglected her

children. However, a finding of abuse or neglect is not required for the trial court to find the Division satisfied the first prong of the best interests test with clear and convincing evidence. Our Supreme Court has stated "termination proceedings, which are brought pursuant to N.J.S.A. 30:4C-15, do not require a prior determination of abuse or neglect." N.J. Div. of Youth & Fam. Servs. v. K.M., 136 N.J. 546, 556 (1994) (emphasis omitted). All that is required is a showing by the Division that "[t]he child's safety, heath or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1).

The initial removal of Zack was precipitated by Ingrid's failure to understand and consent to medical treatment and other concerns. Although she now argues she was merely being indecisive, the facts demonstrate she agreed to the procedure only after a prolonged period of time, and only after the Division had taken custody of Zack. DCPP removed Zoe because she and Ingrid tested positive for cocaine, Ingrid's housing was unstable, she refused to allow her father's home to be assessed, and she was inconsistent with prenatal care. However, the termination of Ingrid's parental rights was not based on the reasons for Zack or Zoe's initial removal.

6

Once the children were placed in resource care, Ingrid did little to show that she was able to become a safe and competent parent. It took her twice as long to finish a drug treatment program than it should have. She failed to attend numerous evaluations. She declined to attend individual therapy and specialized parenting skills training. Visitation throughout the history of the case was sporadic. Furthermore, no expert who evaluated Ingrid throughout this case opined she was able to minimally parent her children at present time.

Because of Ingrid's inability to comply with services and inability to parent her children, Zack and Zoe have remained in foster care almost their entire lives, which deprived them of their mother's solicitude, nurture and care. See In re Guardianship of D.M.H, 161 N.J. 365, 379 (1999). Thus, the trial court properly found that the Division had proven the first prong by clear and convincing evidence.

The second prong of the best interests test addresses whether the parent is unwilling or unable to provide a safe and stable home for the child and if the delay in permanent placement will add to the harm. N.J.S.A. 30:4C-15.1(a)(2). This prong focuses on parental unfitness and overlaps with the proofs gleaned in prong one. D.M.H, 161 N.J. at 379. A trial court must determine if it is "reasonably foreseeable" that the parents can stop harming the children, or that

A-2289-23

they will no longer place them in "substantial jeopardy of physical or mental health." N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 607 (1986). N.J.S.A. 30:4C-15.1(a)(2) "focuses on the parent's ability to overcome the harm to the child." In re Guardianship of K.H.O., 161 N.J. 337, 352 (1999).

This prong may be satisfied if there is clear and convincing evidence the child will suffer substantially from a lack of stability and permanent placement. Id. at 363. Our courts have noted that instability and lack of permanency adversely affect the development of a child, stating that a "child is not a chattel in which a parent has an un-tempered property right." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 110-11 (App. Div. 2004).

There is ample evidence in the record that Ingrid, despite her desire to do so, has not been able to remedy her deficiencies and become a fit parent—regardless of whether the reason for this inability is due to a mental or neurological condition. She visited her children only sporadically while they were in resource care and was unable to significantly bond with them. She either delayed or never completed services. She failed to attend evaluations that may have assisted her and the Division in providing additional resources.

Ingrid argues she may have autism and therefore may have become a viable parent if this had been diagnosed. However, the record is undisputed she

has not been diagnosed with autism and failed to attend evaluations that could have diagnosed her. Dr. Dyer opined she did not have autism, but, regardless of whether she did, she could not safely parent her children. He stressed her lack of emotional investment in her children, which placed them at a "very high" risk of harm. As to Zack, Dr. Dyer was concerned Ingrid would resist medical suggestions and would not be attuned to any change in his medical condition that would require attention. Regarding Zoe, placement with Ingrid would likely cause emotional and behavioral regression, which Ingrid, lacking adequate parenting capacity, could not mitigate, causing more harm to the child.

Despite her potential diagnoses, the evidence showed that at the time of trial Ingrid was unable to independently parent her children as acknowledged by her own expert. Therefore, the trial court correctly held the second prong was met.

With respect to prong three and the Division's duty to provide reasonable services to attempt to ameliorate the harm, Ingrid argues the Division failed to review her Individual Education Program from when she was a minor, did not explore different methods of communicating with her, and did not take time to fully explain things to her. She again relies on her expert's opinion she might have become a functioning parent if she was provided with certain, unspecified

A-2289-23

accommodations. However, this ignores the Division's efforts to have her undergo neuropsychological evaluations, which she refused to attend, and had she done so, may have assisted in determining which, if any, further accommodations may be useful. It is undisputed DCPP accommodated her requests for information delivered by text or emails, and hand-delivered letters rather than by phone, which her expert conceded was appropriate. It also offered her in-person meetings as well as ones with her attorney or other people present, which she often did not attend.

The Division provided Ingrid with visits with the children, including therapeutic supervised visitation programs, which she failed to timely engage in and later did not always attend. Additionally, the Division offered transportation, individual counseling, parenting classes, job training, housing, and a mental-illness, chemical abuse program.

As to the third prong, there were no alternatives to the termination of parental rights. The Division contacted relatives but was unsuccessful in finding familial placements. Lee was not a viable option. He demanded that the Division not contact him. Both Lee and Ingrid refused to allow the Division in his home. Lee also refused training to learn how to care for Zack's medical needs.

A-2289-23

The fourth prong of the best interests test "serves as a fail-safe <u>against</u> termination even where the remaining standards have been met." <u>N.J. Div. of Youth & Fam. Servs. v. E.P.</u>, 196 N.J. 88, 108 (2008) (emphasis added) (quoting <u>N.J. Div. of Youth & Fam. Servs. v. G.L.</u>, 191 N.J. 596, 609 (2007)) (internal quotation marks omitted). It is not a comparison of whether the child's bond with the resource parent is stronger than the bond with the biological parent. "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with that parent." <u>Ibid.</u>

"[A] child's need for permanency is an extremely important consideration pursuant to this prong." <u>R.G.</u>, 217 N.J. at 559. "[A] child has a right to live in a stable, nurturing environment and to have the psychological security that his [or her] most deeply formed attachments will not be shattered." <u>F.M.</u>, 211 N.J. at 453. Here, both children were removed from Ingrid shortly after their birth. Although Ingrid participated in supervised visitation sporadically with varying results, no expert opined she had a bond with either child such that the child would suffer enduring harm from the termination of her parental rights. We conclude the trial court was correct in finding the Division proved prong four of the statute by clear and convincing evidence.

In his thoughtful opinion, Judge Nieves reviewed the evidence presented at trial and concluded the Division had proven all four prongs of the best interests test pursuant to N.J.S.A. 30:4C-15.1 by clear and convincing evidence with respect to both Zack and Zoe, finding termination of parental rights was in their best interests and would not do more harm than good. We conclude Judge Nieves's factual findings are fully supported by the record, and in light of those facts, his legal conclusions are unassailable.

We acknowledge Ingrid's love for her children and her sincere desire to parent them. However, there is simply no evidence that termination of Ingrid's parental rights is not in their best interests. These children have been waiting for permanency for years. Zack just turned seven years old; Zoe will shortly be six. These children deserve stability in their lives and a childhood no longer encumbered by Division involvement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2289-23